IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.    CR-01-16-S-BLW |
| | ) | CV-04-64-S-BLW |
| v. | ) | |
| | ) | **MEMORANDUM DECISION** |
| FELIPE FELIX-CARRAZCO, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

Pending before the Court is Defendant's Motion Under 28 U.S.C. § 2255 to

Vacate, Set Aside, or Correct Sentence (Docket No. 123).

Having fully reviewed the record, the Court finds that the parties have

adequately presented the facts and legal arguments in the briefs and record and that

the decisional process would not be significantly aided by oral argument.

Therefore, in the interest of avoiding further delay, the Court shall decide this

matter on the written motions, briefs and record without oral argument.  Dist. Idaho

Loc. Civ. R. 7.1(b).  Accordingly, the Court enters the following Order.

**Memorandum Decision and Order - 1**

# BACKGROUND

On February 7, 2001, an Indictment (Docket No. 1) was filed charging Defendant with one count of conspiracy and four counts of possession with intent to distribute methamphetamine and/or marijuana.[1]  On March 6, 2001, a Superseding Indictment (Docket No. 6) was filed charging Defendant with two counts of alien in possession of a firearm in addition to the counts in the original Indictment.

The trial was continued three times, twice upon motions by Defendant and once upon joint motion of the parties.  *See* Docket Nos. 20, 26, and 45.  Trial ultimately commenced October 1, 2001 after the Court denied a further motion to vacate.  *See* Docket No. 97.  Trial proceeded on Counts 1 and 5 only, as the other counts had been dismissed pursuant to either defense or Government motion.  *See* Docket Nos. 82 and 97.  The jury returned a verdict of guilty of (1) conspiring to distribute 500 grams or more of a mixture containing a detectable amount of methamphetamine and possession with intent to distribute more than 0 but less than 100 kilograms of a mixture or substance containing a detectable amount of marijuana, and (2) possession with intent to deliver 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine. *See*

---

[1]  All docket references are to Case No. CR-01-16-S-BLW.

**Memorandum Decision and Order - 2**

Docket No. 107.

On January 24, 2002, the Court sentenced Defendant to 492 months of imprisonment, $5,000 fine, $200 special assessment, and five years of supervised release.  *See* Docket Nos. 112 and 113.  Defendant subsequently appealed this Court's denial of his motion for mistrial based on the prosecutor's comments during opening statement and closing argument.  On November 15, 2002, the Ninth Circuit affirmed his conviction.  *See* Docket No. 122.  Defendant thereafter timely filed his  § 2255 Motion to which the Government responded.

The § 2255 Motion was filed by California counsel who was not involved with either the trial or the appeal.  The combined § 2255 Motion and Memorandum is 55 pages long and supported by several affidavits.  The numerous, repetitious, and argumentative claims can be summarized as (1) ineffective assistance of his retained counsel, David Candelaria, based on conflict of interest and deficient performance at all stages of the criminal proceeding; and (2) constitutional error based on the Court's refusal to grant a continuance of the trial and rejection of certain untimely defense motions.

The § 2255 Motion and Memorandum was filed by California attorney Dana Anderson without complying with the requirements of Dist. Idaho Loc. Civ. R. 83.4(e) pertaining to out-of-state counsel.  California attorney Stephen Quade

**Memorandum Decision and Order - 3**

subsequently filed a Substitution of Counsel (Docket No. 136) on July 14, 2004.
The Court's Order (Docket No. 137) recently directed Mr. Quade to comply with
the local rule requirements within thirty (30) days or Defendant would be
presumed to be proceeding pro se.  In response to the Order, Mr. Quade advised
the Court by letter that his predecessor had been retained for the sole purpose of
preparing the § 2255 Motion, and that he would not be submitting an application to
represent Defendant in this Court.

For the reasons set forth below, the Court finds that Defendant is entitled to
an evidentiary hearing on the claims of deficient performance at the pre-trial stage
of the proceedings.  However, Defendant has failed to state a claim based on
conflict of interest or performance at trial and is procedurally defaulted on his
claims of constitutional error on the part of the Court.

## STANDARDS OF LAW

### A.    § 2255 Motion

Title 28 U.S.C. § 2255 provides four grounds under which a federal court
may grant relief to a federal prisoner who challenges the imposition or length of his
or her incarceration: (1) "that the sentence was imposed in violation of the
Constitution or laws of the United States"; (2) "that the court was without
jurisdiction to impose such sentence"; (3) "that the sentence was in excess of the

maximum authorized by law"; and (4) that the sentence is otherwise "subject to collateral attack."

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that a federal district court judge must dismiss a § 2255 motion "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief."  If the Court does not dismiss pursuant to Rule 4(b), the Court shall order the Government "to file an answer, motion, or other response within a fixed time, or to take other action the judge may order." The Court may dismiss the § 2255 Motion at other stages of the proceeding such as pursuant to a motion by the Government, after consideration of the answer and motion, or after consideration of the pleadings and an expanded record.  *See* Advisory Committee Notes following Rule 8 of the Rules Governing Section 2254 Proceedings incorporated by reference into the Advisory Committee Notes following Rule 8 of the Rules Governing Section 2255 Proceedings.

If the Court does not dismiss the proceeding, the Court then proceeds to a determination under Rule 8 of whether an evidentiary hearing is required. The Court need not hold an evidentiary hearing if the issues can be conclusively decided on the basis of the evidence in the record.  *See Frazer v. United States*, 18 F.3d 778, 781 (9th Cir. 1994).  Also, a hearing need not be held if the allegations

**Memorandum Decision and Order - 5**

are "palpably incredible or patently frivolous." *Blackledge v. Allison,* 431 U.S. 63, 67 (1977).

### B.    Ineffective Assistance of Counsel

To prove a violation of the Sixth Amendment's requirement of effective assistance of counsel, a defendant generally must establish that (1) counsel's representation fell below an objective standard of reasonableness, and (2) but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). There is a strong presumption that counsel's performance fell within a wide range of reasonable assistance, and judicial scrutiny of that performance must be "highly deferential." *Id*. at 690.

Both prongs of the *Strickland* test must be met "before it can be said that a conviction (or sentence) 'resulted from a breakdown in the adversary process that render[ed] the result [of the proceeding] unreliable' and thus in violation of the Sixth Amendment." *United States v. Thomas*, 417 F.3d 1053, 1056 (9th Cir. 2005) (quoting *Strickland*, 466 U.S. at 687). The Court may consider the performance and prejudice components of the *Strickland* test in either order. *Strickland*, 466 U.S. at 697.

In a decision issued the same day as *Strickland*, the Supreme Court

recognized a narrow exception to the *Strickland* rule by holding that there is a presumption of prejudice in "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *United States v. Cronic*, 466 U.S. 648, 658 (1984).  Prejudice is presumed only in certain "circumstances of great magnitude" such as denial of counsel at a critical stage, complete failure to subject the prosecution's case to meaningful adversarial testing, or where the likelihood that even a competent lawyer could provide effective assistance is very small.  *Id.* at 659.  The *Cronic* exception is "reserved for situations in which counsel has entirely failed to function as the client's advocate."  *Florida v. Nixon*, 543 U.S. 175, 189 (2004).  *See also Bell v. Cone*, 535 U.S. 685, 696-97 (2002) ("failure must be complete" for *Cronic*'s presumption of prejudice standard to apply).  *Cf. Young v. Runnels*, 435 F.3d 1038, 1043 (9th Cir. 2006) (applying *Strickland* rather than *Cronic* because fact that attorney is subject to disciplinary proceedings does not mean he is presumptively constitutionally ineffective).

## DISCUSSION

As stated above, Defendant has raised several allegations of ineffective assistance of counsel as well as allegations of constitutional error by the Court. The Court will address each of the allegations in turn.

**Memorandum Decision and Order - 7**

## A.    Ineffective Assistance of Counsel

### 1.    Conflict of Interest

Defendant alleges that a conflict of interest existed between him and Mr. Candelaria because Mr. Candelaria's daughter had had a previous romantic relationship with Defendant's cousin which ended "on bad terms" and caused "great animosity with the Felix family." § 2255 Motion, pp. 13-21.  He further alleges that Mr. Candelaria was motivated by a self interest in fee payments.  *Id*., pp. 22-23.  Defendant submitted several affidavits in support of his allegations.  Docket No. 129.

### a.    Relationship with Defendant's Cousin

With regard to conflict of interest based on animosity arising out of Defendant's cousin's relationship with Mr. Candelaria's daughter, the affidavits offer the following:

> Mr. Candelaria's secretary, receptionist, and occasional translator, Diana Ervies, stated that his daughter "had a prior relationship with Hector Felix, a Felix family member.  Adriana did in fact, confirm this to me."  Decl. of Diana Ervies, p. 2, ¶ 9 (Docket No. 129).

> Defendant's wife stated that Adriana (Mr. Candelaria's daughter) said she had many disputes with her father regarding her relationship with Hector, and "I believe Mr. Candelaria failed to prepare for my husband's defense because of the problems and grudges against my husband's family."  Decl. of Melida Felix, pp. 1-2, ¶¶  4

and 6 (Docket No. 129).

> Defendant's daughter stated that at her and her mother's initial meeting with Mr. Candelaria, he expressed an interest in whether her family was related to the "Felix" family in town; that Adriana said she and her father had continuous arguments regarding her relationship with Hector; that a few months later, Adriana said she had ended her relationship with the cousin because he was "crazy and possessive and controlled me;" that Mr. Candelaria had previously represented Hector before Hector began dating his daughter; that Adriana said not to be offended with her father because he just had a bad experience with a Felix family member; that Defendant's family subsequently advised her of problems with his representation of Hector and ensuing arguments; that she and her mother hoped Candelaria would be able to separate his personal feelings from her father's case; and that Candelaria never mentioned his feelings towards their family.  Decl. of Guadalupe Castrejon, pp. 1-3, ¶¶ 3, 10-14 (Docket No. 129).

The Supreme Court has addressed the availability of presumed prejudice in ineffective assistance of counsel cases based specifically on conflict of interest in different contexts.  *See, e. g., Holloway v. Arkansas*, 435 U.S. 475, 488 (1978) (presuming prejudice and requiring automatic reversal where court requires joint representation of three defendants despite timely objection); *Cuyler v. Sullivan*, 446 U.S. 335, 348-50 (1980) (holding that absent timely objection at trial, prejudice will only be presumed if defendant demonstrates an actual conflict of interest adversely affecting counsel's performance).  More recently, it has

**Memorandum Decision and Order - 9**

discussed and explained *Holloway* and *Sullivan*, both of which involved joint

representation scenarios.  The Court specifically limited the *Sullivan* holding to

conflicts involving joint representation while observing that *Sullivan* has been

applied to many other types of conflict scenarios several Courts of Appeals:

> They have invoked the *Sullivan* standard not only when
> (as here) there is a conflict rooted in counsel's
> obligations to former clients (citations omitted), but even
> when representation of the defendant somehow
> implicates counsel's personal or financial interests,
> including a book deal (citation omitted), a job with the
> prosecutor's office (citation omitted), the teaching of
> classes to Internal Revenue Service agents [citation
> omitted], a romantic "entanglement" with the prosecutor
> (citation omitted), or fear of antagonizing the trial judge
> (citation omitted).
>
> It must be said, however, that the language of *Sullivan*
> itself does not clearly establish, or indeed even support,
> such an expansive application. "[U]ntil," it said, "a
> defendant shows that his counsel *actively represented*
> conflicting interests, he has not established the
> constitutional predicate for his claim of ineffective
> assistance."  (Citation omitted) (emphasis added).  Both
> *Sullivan* itself (citation omitted) and *Holloway* (citation
> omitted) stressed the high probability of prejudice arising
> from multiple concurrent representation and the difficulty
> of proving that prejudice. . . . Not all attorney conflicts
> present comparable difficulties.

*Mickens v. Taylor*, 535 U.S. 162, 174-75 (2002).  The Court declined to extend

*Sullivan* to conflicts of interest based on ethical duties.  *Id.* at 176.  The Ninth

Circuit is one of the circuits that has expanded the scope of *Sullivan*.  *See Earp v.*

**Memorandum Decision and Order - 10**

*Ornoski*, 431 F.3d 1158, 1182-84 (9th Cir. 2005).  Nevertheless, it rejected a non-

joint representation conflict of interest claim based on an alleged ethical conflict

where the defendant did not demonstrate that his attorney chose "between possible

alternative courses of action that impermissibly favored an interest in competition

with those of his client."  *Washington v. Lampert*, 422 F.3d 864, 873 (9th Cir.

2005) (citing  *McClure v. Thompson*, 323 F.3d 1233, 1248 (9th Cir. 2003)).

The mere possibility of a conflict of interest is not sufficient grounds for

challenging a conviction.  *Sullivan*, 446 U.S. at 350.  *See also Williams v.

Calderon*, 52 F.3d 1465 (9th Cir. 1995) (allegations of a theoretical conflict,

without more, are not sufficient to challenge a conviction on Sixth Amendment

grounds).  Furthermore, the "adverse effect in the *Cuyler* [*Sullivan*] sense must be

one that significantly worsens counsel's representation of a client."  *United States

v. Mett*, 65 F.3d 1531, 1535 (9th Cir. 1995).[2]  A conflict that causes some problems

with the attorney-client relationship, such as "transient feelings of mistrust," but

have no significant effect on representation is not an "adverse effect" in the *Cuyler*

[*Sullivan*] sense.  *Id.* at 1535-36.

Defendant here is urging the Court to presume prejudice based on the

---

[2] Some courts refer to *Cuyler v. Sullivan* as *Cuyler* and some as *Sullivan*.  The Supreme
Court refers to it as *Sullivan*.  *See, e.g., Mickens v. Taylor*, 535 U.S. 162 (2002).

**Memorandum Decision and Order - 11**

alleged conflict of interest regarding Hector.  Because Defendant did not object at trial to Mr. Candelaria's representation despite knowing about the history with Hector, *Sullivan* requires that Defendant demonstrate an actual conflict adversely affecting representation.  The facts set forth in the affidavits at most establish the *possibility* of a conflict of interest between *Hector* and Mr. Candelaria.  There is no indication that Hector and Defendant were connected in any way other than by blood.  They were not charged in the same indictment.  Defendant was not involved in the charges against Hector.  Hector was not involved in the conspiracy with which Defendant was charged.  Even assuming the truth of the allegations that Mr. Candelaria was angry with his daughter because of her relationship or harbored a grudge against Hector, it is pure speculation that those feelings impacted his representation of Defendant.  It is a stretch to impute any possible conflict of interest between Hector and Mr. Candelaria to Defendant and Mr. Candelaria.  To do so makes the conflict even more speculative.

The affidavit of Mr. Candelaria's secretary indicates that he canceled appointments with other clients, that other incarcerated clients complained about a lack of communication, that he did not return phone calls, and that he had "developed a bad reputation in town concerning these matters."  Ervies Decl. at 2, ¶ 6.  Indeed, it appears that Mr. Candelaria did not treat Defendant any differently

**Memorandum Decision and Order - 12**

from the way he treated many of his other clients.

Accordingly, Defendant's claim of ineffective assistance of counsel based on Mr. Candelaria's alleged hostility towards Defendant based on his daughter's relationship with Hector is dismissed.

### b.      Self-interest in fee payments

In support of his claim that Mr. Candelaria had a conflict of interest based on financial considerations, Defendant alleges that Mr. Candelaria demanded an additional large attorney fee to present a defense, visited the Felix residence to obtain fees, told the Felix family that he would not work further on the case, and kept asking for more money to secure an acquittal. § 2255 Motion, pp. 22-23. While those allegations may be true, they only suggest the possibility of an actual conflict and not that Mr. Candelaria actively represented his own financial interest during the proceedings.  Defendant does not allege that Mr. Candelaria made any defense strategy decision based on his financial self-interest.  Nor does he cite to any specific instances in the record to demonstrate that an actual conflict adversely affected Mr. Candelaria's performance.  *See Caderno v. United States*, 256 F.3d 1213, 1218 (11th Cir. 2001) (citing *Cuyler v. Sullivan,* 446 U.S. 335, 348-50 (1980)).

Defendant's allegations indicate the possibility of an actual conflict and Mr.

**Memorandum Decision and Order - 13**

Candelaria's apparent frustration at not being paid, but that is not enough to demonstrate actual conflict. *Id.* Courts generally presume that counsel will subordinate financial interests and represent their clients responsibly. *Id.* at 1219 (citing *United States v. Taylor*, 139 F.3d 924, 932 (D.C.Cir. 1998) (quoting *United States v. O'Neil*, 118 F.3d 65, 71 (2d Cir. 1997)). Indeed, Mr. Candelaria stated in an affidavit and in open court that his client had run out of money, that he was financing his case out of his own pocket, and that he was not going to withdraw because of money. *Candelaria Decl.* (Docket No. 52); 9/4/01 Ex Parte Mot. To Withdraw Hrg. Tr., p. 17-18.

For the foregoing reasons, Defendant's claim of ineffective assistance of counsel based on self-interest in fee payments is dismissed.

### 2.      Other Claims of Deficient Performance

Defendant has alleged numerous claims of ineffective assistance of counsel in addition to the conflict of interest claims discussed above. These claims cover the entire spectrum of the proceedings from discovery through sentencing.

Philip Gordon was appointed as local counsel approximately two weeks prior to trial.[3] Defendant has not alleged any conflict of interest or ineffective

---

[3] Mr. Gordon was appointed at this late date because the Court granted prior local counsel's motion to withdraw. *See* Docket No. 60.

**Memorandum Decision and Order - 14**

assistance claims against Mr. Gordon.  The record reflects, and the Court's independent recollection confirms, that Mr. Gordon was actively involved in the representation of Defendant filing several motions immediately pre-trial and through trial, sentencing, and appeal.  Accordingly, any claims of ineffectiveness against Mr. Candelaria arising during that time period will be dismissed given that Defendant had the competent assistance of at least one counsel during that time period.  *See United States v. Allen*, 831 F.2d 1487, 1503 (9th Cir. 1987), *cert. denied*, *Allen v. United States*, 487 U.S. 1237(1988).

> a.   **Pretrial Ineffectiveness**

Defendant alleges several examples of Mr. Candelaria's pretrial ineffectiveness, including failure to advise Defendant in writing of the applicable statutory and guideline penalties,  failure to investigate, failure to review discovery, failure to communicate plea offers, failure to visit Defendant personally in Boise, failure to timely file pretrial motions, and misrepresentation to obtain continuances.

The Court will not address each of these factors separately at this time but will allow Defendant to proceed with his claims of pretrial ineffective assistance of counsel.  In doing so, the Court is in no way indicating that they are all potentially meritorious.  However, Mr. Gordon rather easily secured dismissal of five of seven counts through either Court order or Government acquiescence.  It seems more than

**Memorandum Decision and Order - 15**

a theoretical possibility that had defense counsel timely sought dismissal of those claims, Defendant would have been in a stronger bargaining position to secure a plea agreement that at the very least could have resulted in a reduction for acceptance of responsibility.  Defendant was sentenced at an offense level of 42 with a criminal history category of I yielding a guideline range of 360 to Life.  Tr. 1354.  If Defendant had pled guilty and received a 3-level adjustment for acceptance of responsibility, his guideline range would have been 262 to 327 months.  If he had received a 2-level adjustment for acceptance of responsibility, his range would have been 292-365 months.  Even if the Court had sentenced Defendant at the high end of either of those ranges, his sentence would have been substantially less than the 492 months he received.  Therefore, the Court could fairly easily find prejudice if Defendant were to prove deficient performance.

The Court cannot determine from the record why the pretrial motions were not filed earlier.  Indeed, it could have been due to lack of investigation,  failure to review discovery, or some other lack of diligence.  Additionally, the Court cannot determine from the record whether defense counsel attempted to negotiate a plea agreement, whether any offers were communicated to defense counsel by the Government, or whether any communicated offers were in turn communicated to Defendant.  Accordingly, the Court will grant an evidentiary hearing and allow Defendant to

**Memorandum Decision and Order - 16**

proceed with his claims of ineffective assistance of counsel at the pretrial stage of the proceedings.

### c. Ineffectiveness at Trial

As stated above, Defendant had the competent assistance of counsel at trial and sentencing. That is reason alone to dismiss any claims pertaining to trial performance. However, these claims are dismissible on other grounds as well.

### 1. Failure to Call Trial Witnesses

Defendant failed to identify the six witnesses Mr. Candelaria failed to call, provide the specifics of their expected testimony, or allege that their testimony would have resulted in an acquittal. Furthermore, based on the limited assertions as to the nature of that testimony, it appears that it would have been cumulative to the testimony of Defendant's wife and daughter.

### 2. Failure to Introduce Documentary Evidence

Defendant alleges that Mr. Candelaria was ineffective in failing to introduce Defendant's employment records, his children's school records, and cattle sales receipts. A review of the record indicates that defense counsel did not fail to introduce those records. Rather, he tried to introduce them but the Court ruled that the were inadmissible either for lack of authentication or foundation. *See generally* Tr. 1022 -29.

The Court presumes that Defendant is referring to employment records mentioned in Mr. Candelaria's Second Motion to Vacate and Continue Trial (Docket No. 96). In that motion, Mr. Candelaria argued that the Government's allegedly late-filed discovery indicated that two witnesses, Danny Guntrum and Joe Jiminez, would testify that Defendant was present in Idaho for extended periods or even resided here for a while. Docket No. 96, ¶¶ 4 and 5. Mr. Candelaria contended that because he had not anticipated such testimony, he had not obtained Defendant's employment records to rebut suggestions in that expected testimony. § 2255 Motion, pp. 39-40.

Defendant has not identified or produced such employment records. Nor does he state that any such records were actually available. Furthermore, the Court has reviewed the testimony of Mr. Guntrum and Mr. Jiminez. It does not appear that their testimony tended to show that Defendant was in Idaho for extended periods of time or lived here.

Mr. Guntrum testified in detail about one occasion in late 1995 when he and Mr. Jiminez met at a trailer with Defendant and several other individuals to discuss an apparent shrinkage problem with the methamphetamine obtained from Defendant. Tr. 702 - 711. Other than that, he testified that he had seen Defendant on approximately 8 occasions at Mr. Jiminez's car lot. Tr. 711. His testimony did not imply prolonged visits to Idaho.

**Memorandum Decision and Order - 18**

Mr. Jiminez testified about the same late-1995 meeting in the trailer with Defendant and several others.  Tr. 555-563.   He further testified that he got drugs directly from Defendant only twice in 1995.  Tr. 564.  The other time was at a house on Karcher Road.  Tr. 566-69.  He referred to Defendant's visit to his car lot in early 1996.  Tr. 571.  He testified as to several other personal encounters with Defendant in Idaho, indicating that Defendant had a cousin he with whom he stayed.  Tr. 591; 688-89.  However, Mr. Jiminez also testified several times that drugs were picked up from Defendant in California.  E.g., Tr. 571;574-75; 576.  He testified that he called Defendant at his residence which, in the context of the testimony, was in California. Tr. 576-77; 616.  Furthermore, he testified that he himself had spent the night at Defendant's home in California when he went down with others to pick up some methamphetamine.   Tr.  579-84; 657.

Although Mr. Jiminez's testimony revealed that Defendant came to Idaho on a number of occasions, his testimony did not suggest that he lived here or stayed for prolonged periods of time.  To the contrary, it indicated that Defendant's residence was in California.  Accordingly, even if Mr. Candelaria had been deficient in not obtaining employment records, if indeed they existed, establishing the Defendant was never absent for more than a couple of days, Defendant has not has not shown prejudice.

**Memorandum Decision and Order - 19**

Defendant did attempt to introduce two W-2 forms to show that Defendant was employed.  However, the Court ruled them inadmissible for lack of authentication. Tr. 1136.  These documents were offered to show that if Defendant were a drug trafficker, he would not have been working picking fruit. Tr. 1022-23.  They were not offered as alibi evidence.  Tr. 1023.  The Court found the information relevant but indicated that Defendant's employment could be established through witness testimony. Tr. 1025-29.  The Court further noted that introducing those W-2 forms could lead to prejudicial rebuttal evidence that Defendant was an illegal alien using a fraudulent social security number.  Tr. 1028-29.

Testimony that Defendant was a farm worker was then elicited from Melida Felix-Leon and Guadalupe Castrejon, his wife and daughter, respectively.  Tr. 1126; 1141-46; 1172.  The record shows conclusively that the evidence of Defendant's employment as a field worker was uncontradicted.  Accordingly, even if Mr. Candelaria was deficient in not having the W-2 forms authenticated properly, there was no resulting prejudice.  Indeed, Defendant would more likely have been prejudiced by the introduction of those documents.

The Court also ruled that certain of Defendant's children's school records covering the period of 1992-93 were inadmissible for lack of foundation by a qualified school official.  Tr. 1019-20. The Court stated then and finds now that they had little,

if any, relevance to this proceeding. The Indictment alleged a conspiracy period beginning in 1994, and the charged offenses occurred in 1999. Tr. 1019. At most, the school records would show by implication that Defendant's family was living in San Bernadino and not Fresno in 1992-93. The fact that they lived, and the children attended school, anywhere in California did not prevent Defendant from engaging in drug trafficking in Idaho. Also, as stated above, there was no testimony that Defendant spent prolonged periods or lived in Idaho, so there was nothing to rebut. Furthermore, the testimony of Defendant's wife and daughter established the locations and time periods of the family residences. Tr. 1125; 1179-82.

Finally, Defendant challenges the failure to have cattle receipts admitted into evidence. Defendant does not allege the purpose for which they should have been admitted or how their admission would have resulted in an acquittal. Although the Court had initially deemed them inadmissible for lack of foundation and authenticity, one of the receipts was ultimately admitted as Defendant's Exhibit D. Tr. 1156-58; Index, p. G. In any event, the testimony of Defendant's wife and daughter established that the family sold calves from time to time. Tr. 1126; 1155-58; 1172. As the Court noted at the time, "Why do we need the documents which are really hearsay statements from another party" when the witness can testify that they are involved in the business of selling calves. Tr. 1154.

**Memorandum Decision and Order - 21**

### 3.    Failure to Pursue Mistrial

Defendant alleges that defense counsel's failure to pursue a motion for mistrial following the prosecutor's mistaken remark during his opening statement that Defendant would testify to drug dealing and conspiracy activities constituted ineffective assistance of counsel. § 2255 Motion, p. 49.  Mr. Candelaria did, in fact, move for a mistrial on that issue which the Court deferred ruling upon until it had an opportunity to review the transcript of the Government's opening argument.  Tr. 65-66.  After reviewing the transcript, the Court denied the motion.  Tr. 510-12.  More importantly, however, Defendant appealed that issue, and the Ninth Circuit found the prosecutor's remark inadvertent and harmless.  *See United States v. Feliz-Carrazco*, 50 Fed. Appx. 882 (9th Cir. 2002) (unpublished opinion).  Accordingly, Defendant is barred from raising this claim in a § 2255 proceeding.

### 4.    Failure to Present a Theory of Defense

Defendant alleges that Mr. Candelaria failed to formulate a defense or request any theory of defense instructions.  § 2255 Motion, pp. 49-50.  However, Defendant did not allege what theory of defense should have been advanced.  He merely revisits his prior arguments that Mr. Candelaria was deficient in not getting documents admitted, not calling witnesses at trial, and the like.  *Id.*  However, the Court determined above that some of the stated bases for the claim were not prejudicial.  The

others are repetitive of pre-trial assistance of counsel claims that the Court is allowing

to proceed.   Accordingly, the Court will dismiss the claim of failure to present a

theory of defense.  The Court will also dismiss the related claim of failure to request

a jury instruction on the theory of the defense.  The record indicates that local counsel

argued, albeit unsuccessfully, for more favorable instructions. Tr. 1200-07.

### d.    Assignments of Error to the Trial Court

Defendant alleges that the Court deprived him of his Sixth Amendment right

to counsel by refusing to grant a continuance of the trial date and by rejecting certain

untimely defense motions. § 2255 Motion, pp. 32-35; 44-45; 48.   Defendant is

procedurally barred from raising these claims by failing to raise them on direct appeal

unless he can show "cause" for his omission and resulting "prejudice."  *Bousley v.*

*United States*, 523 U.S. 614, 622 (1998).  Defendant raised the issue of the Court's

denial of his mistrial motion yet offers no reason for not raising the issues of the

Court's refusal to grant a continuance or rejection of certain motions.  Furthermore,

at the time of hearing the motion to continue, this Court found  an "absolute lack of

showing of prejudice" to justify a continuance.  Tr. 29-30.

### CONCLUSION

As stated above, Defendant's § 2255 Motion and supporting Memorandum,

filed by apparently retained California counsel, is 55 pages long.  It is a narrative

**Memorandum Decision and Order - 23**

laundry list of claims, many of which are repetitious.  Counsel was obviously

trying to build a case for ineffective assistance of counsel based on the cumulative

effect of many errors.  Nevertheless, the Court finds that the dismissed allegations

of error were not significant or prejudicial enough even taken together to support

finding of ineffectiveness.   However, the Court will allow Defendant to proceed

with his claims of pre-trial ineffective assistance of counsel.  It is apparent from the

record that these claims may have some validity and Defendant should be given an

opportunity to develop those claims at an evidentiary hearing.  As stated at the

outset, the very fact that Defendant would have likely received at least an

acceptance of responsibility adjustment had he pled guilty is indicative of possible

prejudice.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendant may

proceed with his claim of *pre-trial* ineffective assistance of counsel.  All other

claims are dismissed.

IT IS FURTHER HEREBY ORDERED that the Clerk of Court shall take

the necessary steps to obtain counsel from the CJA appointment list to represent

Defendant in this proceeding.  Because Philip Gordon was involved in the

underlying criminal case, the Clerk of Court shall not appoint him in this

**Memorandum Decision and Order - 24**

proceeding.

IT IS FURTHER HEREBY ORDERED that any party desiring to conduct discovery may do so only with leave of Court which leave must be requested in accordance with Rule 6 of the Rules Governing Section 2255 Proceedings.

IT IS FURTHER HEREBY ORDERED that all summary judgment and other potentially dispositive motions shall be filed by **June 30, 2006.**

IT IS FURTHER HEREBY ORDERED that if no dispositive motions are filed, the parties shall meet and confer regarding the length of time required for an evidentiary hearing.  The parties shall then contact LaDonna Garcia, Courtroom Deputy Clerk, at 334-9021, by **July 14, 2006**, to set a date for the evidentiary hearing.

DATED:  **March 21, 2006**

B. LYNN WINMILL
Chief Judge
United States District Court

**Memorandum Decision and Order - 25**