IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Plaintiff-Respondent, | ) | Case Nos. | CR-01-16-S-BLW |
| | ) | | CV-04-64-S-BLW |
| v. | ) | | |
| | ) | **ORDER** | |
| FELIPE FELIX-CARRAZCO, | ) | | |
| | ) | | |
| Defendant-Movant. | ) | | |
| | ) | | |

On April 30, 2007, the Court held an evidentiary hearing on the claim of

pre-trial ineffective assistance of counsel alleged by Defendant ("Felix") in his

§ 2255 Motion (Docket No. 123).[1]  At the hearing, Felix submitted the deposition

transcripts of Kathleen Elliott and Philip Gordon who had served as local counsel

to retained counsel David Candelaria.  In addition, the Court heard testimony of

Mr. Felix, Mr. Candelaria, and Agent John Kent Nygaard. Having reviewed the

record and considered the evidence and oral arguments presented at the evidentiary

hearing, the Court enters the following Order granting Felix's § 2255 Motion with

respect to the claim of pre-trial ineffective assistance of counsel.

---

[1]  The Court had previously dismissed all other claims without an evidentiary hearing but had appointed counsel to represent Felix at the evidentiary hearing on the pretrial ineffective assistance of counsel claim. *Mem. Dec.*  (Docket No. 138).

**Order - 1**

## PRE-TRIAL INEFFECTIVE ASSISTANCE OF COUNSEL

Felix alleged several grounds of ineffective assistance of counsel, including failure to advise him of the applicable statutory and guideline penalties, failure to investigate, failure to review discovery, failure to communicate plea offers, failure to explore plea offers, failure to visit Defendant personally in Boise, failure to timely file pretrial motions, and misrepresentation to obtain continuances. Felix specifically alleged that he "would have affirmatively accepted a plea agreement with prosecutors thus avoiding a criminal trial" had he been properly counseled. *§ 2255 Motion* at 28 (Docket No. 123).  In granting an evidentiary hearing on this claim, the Court noted that it could not determine from the record whether defense counsel attempted to negotiate a plea agreement, whether any offers were communicated to defense counsel by the Government, or whether any communicated offers were, in turn, communicated to Felix.

The evidentiary hearing focused almost exclusively on deficiencies regarding the plea process.  Accordingly, to the extent that Felix did not waive the other grounds at the hearing, the Court determines that Felix has failed to provide evidence supporting those additional grounds for relief.


### A.    Evidentiary Hearing

Order - 2

The following testimony was elicited at the hearing or was contained in the deposition testimony of Mr. Gordon.[2]

## Felix

Felix testified that Mr. Candelaria did not discuss the contents of the police reports or the expected testimony of the Government's witnesses during his meetings with him.  Mr. Candelaria met with him once in California and once in Idaho.

Felix further testified that he did not remember any discussions with Mr. Candelaria regarding the strength of the Government's case, the benefits of cooperating with the Government, or the sentencing guidelines.  Rather, his recollection was that Mr. Candelaria said the Government's case was weak and he was going to win.  He further testified that at one time Mr. Candelaria told him they had a deal for 10 years, but they were not going to take it because they were going to win at trial.  Other than that, Felix said that the only discussion of a plea agreement was the day before trial in a meeting with the Government at the jail.  He did not fully understand everything that was discussed at that meeting.  According to Felix, neither AUSA Lindquist nor Agent Nygaard spoke Spanish

---

[2]  The only testimony in Ms. Elliott's deposition relevant to the issue of plea negotiations was that to her knowledge, Mr. Candelaria never communicated any plea offers to Felix.

**Order - 3**

very well.

Felix further testified that if he had been advised by Mr. Candelaria that the evidence against him was strong, he would have probably pled guilty.  However, he would not have cooperated by providing information about others because he did not have any such information.  He denied that the arresting officers had spoken with him about the possibility of a reduced sentence if he cooperated.

## Candelaria

Mr. Candelaria testified that he met with Felix up to seven times in California and Idaho, discussed federal court procedures and the sentencing guidelines, and told him that the witnesses' testimony connecting him to the drugs, if believed, would be very damaging and he would lose.  Felix did not believe that the witnesses' testimony was evidence.  Mr. Candelaria further testified that he discussed pleading or cooperating with Felix the Sunday before trial.  Felix agreed to plead guilty that day after meeting with him and  Mr. Gordon.  They debriefed Felix before calling the Government.  After the Government presented him with a use immunity agreement, they met with Agent Nygaard and started debriefing again.[3]  However, Felix decided that he wanted to go to trial.  The agreement was

---

[3]  The handwritten use immunity agreement was introduced at the evidentiary hearing as Exhibit No. 1.

**Order - 4**

for a reduction for acceptance of responsibility and a 5K1.1 departure for substantial assistance if Felix cooperated.

Mr. Candelaria further testified that he himself was fluent in Spanish and that Mr. Lindquist was probably even more fluent than he was.

Mr. Candelaria had no documentation evidencing his California or Idaho visits to Felix.  Nor did he have any letters in his possession proving that he discussed the guidelines, 5K1.1 motions, or discovery.  Mr. Candelaria indicated that he had turned his entire file over to a Mr. Anderson, whom the Court notes is the individual who prepared the § 2255 Motion in this case.[4]

## Agent Nygaard

Agent Nygaard testified that he was one of the arresting officers.  They explained the federal system, the guidelines, the entire case against him, the charges, the identity of others arrested, what they were going to say, that they wanted his cooperation to continue the investigation "up the food chain," that he could get points off for pleading without cooperating, that he could get more points off for cooperating, and that the more he cooperated, the more points off he would receive.  He testified that Felix clearly understood what the agents told him.

---

[4]  The Court also notes that the § 2255 Motion prepared by Mr. Anderson alleges that there was no written communication with the prosecutors concerning an agreement or any written correspondence with Felix regarding a plea bargain.

**Order - 5**

Agent Nygaard further testified that he and AUSA Lindquist met with Mr. Candelaria during the arraignment and outlined the case. They met also perhaps at one other time. He was present at the meeting the night before trial after Mr. Candelaria advised that Felix was willing to talk about pleading guilty. However, Felix was unwilling to give any information that was of any value and barely admitted his own involvement. Nevertheless, AUSA Lindquist was still willing to give him a 2- to 3-level reduction for acceptance of responsibility if he pled guilty.

Agent Nygaard testified that Mr. Lindquist spoke Spanish quite well having had a special assignment in South America. He also testified that he himself had spoken Spanish every day for approximately 30 years.

**Gordon**

Local counsel Philip Gordon testified in his deposition that, in his opinion, had Mr. Candelaria acted more aggressively in having five of the seven counts dismissed before the Government had gone to the expense of transporting witnesses from federal prisons around the country, he would have been in a better bargaining position.

Mr. Gordon further testified that he was present at a meeting with Government attorneys, Mr. Candelaria, and Felix just prior to trial when a plea agreement was discussed. He testified that what happened was "an extremely

**Order - 6**

perfunctory attempt" by Mr. Candelaria to explain the consequences of pleading guilty versus going to trial.  The Government had offered points off for acceptance of responsibility even though the trial was the next day.  He cited the "single most egregious failing" regarding pretrial procedures was Mr. Candelaria's failure to engage in "meaningful discussions" regarding the potential consequences of a plea.

In Mr. Gordon's opinion, Mr. Candelaria was not well prepared at trial in general, kept misstating his client's and other witnesses' names, and was not well prepared to cross examine the Government's witnesses.  He viewed these factors as indicative of a lack of attention given to his client and the case.  He felt that Mr. Candelaria should have at least asked for a day's continuance to further consult with his client about pleading guilty.

### B.    Applicable Law

The Sixth Amendment requires that a defendant have effective assistance of counsel at all "critical stages" of the criminal process, including the plea stage. *United States v. Leonti*, 326 F.3d 1111, 1116-17 (9th Cir. 2003).  The *Strickland* two-part test is applicable to a case in which a defendant contends that his counsel was constitutionally inadequate during the guilty plea process.  *Hill v. Lockhart,*

**Order - 7**

474 U.S. 54, 58 (1985).[5]  This well-established two-prong test for evaluating

ineffective assistance of counsel claims is deficient performance and resulting

prejudice.  *See Strickland v. Washington*, 466 U. S. 668 (1984).  More specifically,

to prevail on an ineffective assistance of counsel claim, a defendant must show that

counsel's performance "fell below an objective standard of reasonableness" and

that "there is a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different."  *Id.* at 688, 697.  *See also*

*Bell v. Cone*, 535 U.S. 685, 695 (2002).  A court may address the two prongs in

either order and need not address both prongs if a defendant fails to make the

requisite showing on one prong.  *Strickland*, 466 U.S. at 697.

### a.    Deficient Performance

The period from the arraignment extending to the beginning of trial is

"perhaps the most critical period of the proceedings."  *Nunes v. Mueller*, 350 F.3d

1045, 1052 (9th Cir. 2003) (citing *Powell v. Alabama*, 287 U.S. 45, 57 (1932)).  It

is during this time that a defendant may have his best opportunity for avoiding or

mitigating a harsh sentence by cooperating with the government.  *Leonti*, 326 F.3d

at 1117.  Among a competent attorney's duties during this time, in addition to

---

[5]  Although *Hill* was decided in the context of a defendant who pled guilty, it is equally
applicable to situations in which a defendant did not plead guilty but alleges that he would have
done so but for ineffective assistance of counsel during the plea process.  *See Nunes v. Mueller*,
350 F.3d 1045, 1052-53 (9th Cir. 2003).

advising whether and when to cooperate, include "facilitating communication between the defendant and the government, attending proffer sessions, ascertaining the government's expectations and whether the defendant is satisfying them, communicating the client's limitations to the government, and establishing a record of attempts to cooperate." _Id._ at 1118-19.  In addition to failure to facilitate cooperation, an ineffective assistance of counsel claim can arise from failure to inform a defendant of a plea bargain, failure to advise a defendant to enter a plea bargain when it is clearly in his interests, and delay in pursuing a plea agreement. _Id_. at 1117.  Even where counsel is aware that the evidence against a defendant is "overwhelming" and the defendant has advised him that he will not cooperate, counsel's performance is deficient if he does not advise defendant of the option to plead without cooperating.  _United States v. Booth_, 432 F.3d 542, 549-50 (3rd Cir. 2005).

Despite the recognized critical nature of the plea process, a defendant does not have a constitutional right to a plea bargain.  _Nunes_, 350 F.3d at 1052 (citing _Weatherford v. Bursey_, 429 U.S. 545, 561 (1977)).  However, once a plea offer has been made, a defendant has the right to counsel's assistance in making an informed decision about whether to accept it.  _Id_. (failure to accurately communicate plea offer constitutes ineffective assistance of counsel); _Leonti_, 326 F.3d at 1117

**Order - 9**

(defendant is entitled to effective assistance of counsel in deciding whether and when to plead guilty); *United States v.* Day, 285 F.3d 1167, 1172 (incorrect advice from counsel regarding plea deprives defendant of opportunity to make an informed decision); *United States v. Rivera-Sanchez*, 222 F.3d, 1057, 1060-61 (9th Cir. 2000) (counsel is required to communicate the terms of a plea offer and ensure that the defendant understands its terms and significance); *United States v. Blaylock*, 20 F.3d 1458, 1465-66 (9th Cir. 1994) (failure to communicate plea offer constitutes ineffective assistance of counsel).

As with any ineffective assistance of counsel claim, in order to demonstrate deficient performance, a defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687.  As explained in *Strickland*, there are certain basic duties of counsel representing a criminal defendant:

> Counsel's function is to assist the defendant, and hence counsel owes the client a duty of loyalty, a duty to avoid conflicts of interest. *See Cuyler v. Sullivan, supra*, 446 U.S., at 346, 90 S.Ct., at 1717. From counsel's function as assistant to the defendant derive the overarching duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution. Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process. *See Powell v. Alabama*, 287 U.S., at

**Order - 10**

68-69, 53 S.Ct., at 63-64.

*Strickland*, 466 U. S. at 688.  However, other duties also arise depending upon the particular facts of a case.  Therefore, the proper inquiry is "whether counsel's assistance was reasonable considering all the circumstances."  *Id.*  A court's evaluation of counsel's performance "must be highly deferential" and the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  As a result, a court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Id.* at 690.

### b.    Prejudice

In the plea process context, forfeiture of the opportunity for a 3-level reduction for acceptance of responsibility can constitute prejudice.  *Day*, 285 F.3d at 1172.  For example, prejudice is shown when a defendant establishes that but for counsel's deficient performance in incorrectly advising him regarding the benefits of a plea agreement, he would have received a lesser sentence based on acceptance of responsibility.  *Id.*  *See also Booth*, 432 F.3d at 549-50 (loss of 3-level reduction for acceptance of responsibility constituted prejudice where counsel failed to inform defendant that he could enter an "open" plea rather than accept plea offers based on cooperation); *Blaylock*, 20 F.3d at 1466 (loss of what would have been at

**Order - 11**

least a 2-level reduction for acceptance of responsibility and likelihood that
government would not have sought enhancements constitutes prejudice where
counsel failed to communicate plea offer).

Even if a defendant has insisted upon going to trial and received a fair trial,
he can still establish prejudice if he can show that there is a reasonable probability
that the result would have been different. *Blaylock*, 20 F.3d at 1466 (defendant
entitled to show that had he known of a plea offer, he would have accepted it).

### C.     Discussion

Here, we have an individual convicted following a jury trial of one count of
conspiracy to distribute and one count of distribution of methamphetamine.  Felix
was convicted primarily on the testimony of other members of the conspiracy.  The
"very conservative" estimate of the methamphetamine attributed to him was four
times the amount necessary for level 38.  *PSR*, ¶ 62.  He proceeded to trial to assert
his innocence, and he declined to provide a statement to the Probation Officer
regarding the offenses of conviction.  *PSR*, ¶¶ 55, 56.  Accordingly, the Probation
Officer recommended against a reduction in offense level for acceptance of
responsibility.  *PSR*, ¶ 57.  After a 2-level enhancement for possession of a firearm
and a four-level enhancement for role in the offense, the Probation Officer
determined the total offense level to be 44 which, with a criminal history category

**Order - 12**

of I, resulted in a guideline range of life.  *PSR*, ¶ 71.  However, the Court declined to apply the firearm enhancement and established the offense level at 42.  Sent. Tr. 1354.  An offense level of 42, with a criminal history category of I, resulted in an guideline range of 360 to life.  The Court ultimately sentenced Felix to a 492-month term of imprisonment.

### 1.    Failure to Communicate Plea Offer

It does not appear that the Government ever made a formal plea offer. Agent Nygaard believes that AUSA Lindquist met with Mr. Candelaria at the arraignment and one other time.  However, he did not testify as to the substance of those discussions, and he does not know whether Mr. Candelaria relayed to Felix the content of those discussions.  Likewise, Mr. Candelaria did not testify that any substantive plea negotiations occurred other than the day before trial.  The Court can only assume that the discussions referred to by Agent Nygaard were general in nature and did not constitute a formal plea offer.  Therefore, the Court cannot find that there was ineffective assistance of counsel based on failure to communicate a plea offer.

### 2.    Failure to Pursue or Delay in Pursuing Plea Agreement

As stated in *Leonti*, plea bargaining is a well-recognized and important part of the modern criminal process providing benefits to both a defendant and the

**Order - 13**

government.  *Leonti*, 326 F.3d at 1117-18.  The question then arises whether Mr. Candelaria was deficient in not actively seeking a plea agreement from the Government under the circumstances of this case.

There is simply no evidence here, despite what he felt was a strong case against Felix, that Mr. Candelaria actively sought a plea bargain or encouraged Felix to plead guilty.  Rather, Mr. Candelaria testified only in the most general of terms that he discussed federal court procedures, the sentencing guidelines, and the testimony of the prospective witnesses with Felix.  Mr. Candelaria testified that Felix did not believe that testimony of the various individuals that they had dealings with Felix was evidence.  He did not testify, however, that he tried to make Felix understand the reality that their testimony was, in fact, evidence. He did not testify that he had evidence to impeach those witnesses' credibility or any other kind of exonerating evidence justifying risking going to trial. He did not testify that he tried to explain the benefit of pleading either with or without cooperation.  He did not testify that he compared possible sentences under the various scenarios of pleading with cooperation, pleading without cooperation, and going to trial.  He did not testify that he approached the Government in an attempt to negotiate a plea bargain.  Rather, he appears to have simply taken Felix at his word that he either could not or would not cooperate and wanted to go to trial.

**Order - 14**

Agent Nygaard made it quite clear that the Government was interested from the beginning in obtaining information from Felix regarding individuals "up the food chain" of the drug conspiracy.  Given the importance of the plea bargain in the criminal process, the Government's substantial interest in reaching individuals supplying Felix with drugs, and the Court's substantial experience with the Government's handling of drug conspiracy cases in this district, the Court finds it highly improbable that the Government would not have discussed with Mr. Candelaria its interest in reaching a plea bargain with Felix.  Although Felix may have insisted at the time that he would not cooperate and wanted to go to trial, there is a more than reasonable probability that he would have at least pled guilty without cooperation had Mr. Candelaria fully advised him of the benefits of doing so and the dangers of not doing so.  *Cf. Boria v. Keane*, 99 F.3d 492, 497 (2nd Cir. 1996)(observing that had counsel advised defendant of "his professional judgment that it was almost impossible for a 'buy and bust' defendant to obtain an acquittal . . . . there would have been more than a 'reasonable probability' that defendant's father would have organized the family to persuade petitioner not to pursue the suicidal course he seemed bent upon following.")

The Indictment was filed on February 7, 2001, yet no substantive motions were filed until Mr. Gordon became involved in the case on September 17, 2001, a

**Order - 15**

mere two weeks before trial.[6]   Mr. Gordon believes that if Mr. Candelaria had

acted more aggressively in obtaining dismissal of five easily dismissible counts

earlier in the proceeding before the Government had transported prisoners to Boise

to testify against Felix, he would have been in a better bargaining position.   The

Court agrees.   As stated above, delay in pursuing a plea agreement can constitute

ineffective assistance of counsel if to do so is "outside the wide range of

professionally competent assistance."   *See Leonti*, 326 F.3d at 1117 (quoting

*Strickland*).

The Court finds that given the overwhelming evidence against Felix and the

potential life sentence, it was unreasonable to not actively pursue a plea agreement

until the eve of trial and try to convince Felix of the wisdom of pleading guilty.

Had Mr. Candelaria done so, and had Felix still insisted on going to trial, Felix

would have been making an informed decision.   However, there is simply no

evidence that Mr. Candelaria lived up to his role as counsel at this critical stage of

the proceedings.

### 3.      Eve of Trial Plea Offer

The Government was willing to give a 2- to 3-level reduction for acceptance

---

[6]  Mr. Candelaria had previously requested and obtained two continuances and asked for another the day trial was scheduled to commence on October 1, 2001.

**Order - 16**

of responsibility even on the eve of trial.  The Government was also willing to offer a substantial assistance reduction if Felix would provide useful information at that late date.  Felix either would not or could not provide any useful information. The Court is not suggesting that even the most capable of counsel could have convinced Felix to cooperate.  However, it is clear that Felix was not adequately made aware that day either of the strength of the case against him or the effect of a 2- to 3-level reduction in offense level.

Mr. Candelaria testified generally that he discussed pleading or cooperating with Felix the day before trial and notified the Government after Felix indicated that he was willing to plead guilty.  Felix testified that he only somewhat understood the meeting with his counsel and the Government that day.  He said that they talked, sent him back, and called him back again.  He further testified that neither Agent Nygaard nor Mr. Lindquist spoke Spanish very well.  The Court notes that Felix's credibility is somewhat suspect given the direct contradictions with many aspects of the testimony of Agent Nygaard and Mr. Candelaria. However, his testimony regarding the plea negotiation session the day before trial is bolstered by the deposition testimony of Mr. Gordon.[7]

---

[7]  Mr. Gordon has appeared before this Court on numerous occasions representing defendants in criminal matters.  He testified that at the time of the Felix trial in 2001, he had been handling criminal cases in federal court for almost fourteen years.

**Order - 17**

Mr. Gordon testified that Mr. Candelaria's efforts to advise Felix regarding the benefit of pleading guilty were "extremely perfunctory" and that Mr. Candelaria's "single most egregious failing" was his failure to engage in "meaningful discussions" regarding the potential consequences of a plea.  Mr. Gordon opined essentially that it takes a good deal of time, in more than one session, to have meaningful discussions with non-English speaking clients, who do not believe there is any evidence against them, about the realities of the evidence and the benefits of pleading guilty.

While Mr. Gordon's practice of "hand holding" a client may be the ideal attorneys should try to meet, Felix was not constitutionally entitled to that level of representation. .  However, he did not even receive the reasonably effective assistance to which he was entitled.  Mr. Candelaria's "perfunctory" and "meaningless" presentation on the eve of trial was insufficient to provide Felix with the necessary information regarding the consequences of his choice.  While such a presentation may be acceptable when less is at stake, it is not acceptable where a defendant is risking a life sentence.

### 4.    Prejudice

As stated above, Felix was sentenced at an offense level of 42 with a criminal history category of I yielding a guideline range of 360 to Life.  Sent. Tr.

1354.  If Defendant had pled guilty and received a 3-level adjustment for acceptance of responsibility, his guideline range would have been 262 to 327 months.  If he had received a 2-level adjustment for acceptance of responsibility, his range would have been 292-365 months.   Even if the Court had sentenced Felix at the high end of either of those ranges, his sentence would have been substantially less than the 492 months he received.  Clearly, Felix was prejudiced by Mr. Candelaria's deficient performance.

### D.   Conclusion

Felix has satisfied both prongs of the *Strickland* test.  Mr. Candelaria failed to provide effective assistance of counsel during the critical plea stage of the criminal proceedings, and Felix was prejudiced by that deficient performance. Therefore, the Court will return Felix to the position he was in prior to the deficient performance.

Because Felix, even at the evidentiary hearing, continued to maintain that he could not provide any information to the Government, it is not reasonable to assume that he would have done so and received a reduction for substantial assistance.  However, he would have received at least a 2-level and possibly a 3-level reduction for acceptance of responsibility even the night before trial. Given that he would have likely received the 3-level reduction had he pled earlier in the

proceeding, the Court will return him to that position.  Accordingly, Felix will be resentenced based on an offense level of 39, criminal history category I, with an advisory guideline range of 262 to 327 months, subject to application of the other sentencing factors set forth in 18 U.S.C. § 3553(a).

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Felix's Motion Under 28 U.S.C. § 2255 is GRANTED IN PART.  It is granted only with respect to the claim of pretrial ineffective assistance of counsel.  All other claims were previously dismissed.  *See Mem. Dec. and Order* (Docket No. 138).

IT IS FURTHER HEREBY ORDERED that this case be set for resentencing.  The Courtroom Deputy Clerk will notify the parties of the date and

time for resentencing.



DATED:  **May 31, 2007**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Order - 21**